OPINION
Defendant-appellant Mark Ferrell appeals the conviction and sentence of the Stark County Court of Common Pleas on three counts of rape, in violation of R.C. 2907.02, with force specifications; three counts of felonious sexual penetration, in violation of2907.12, with force specifications; and four counts of gross sexual imposition, in violation of 2907.05. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
In January, 1996, Susan Lauver, filed a police report with the Jackson Township Police Department alleging that her mother, Judy Ferrell, and appellant, who was her former stepfather, had physically and sexually abused her and her brother, Kenneth Dale Lauver, between 1985 and 1988.
On April 17, 1996, Judy Ferrell gave a taped statement to Detective James Armstrong of the Canton Police Department. During the interview, Judy Ferrell confirmed the truth of the allegations made by her daughter and admitted her involvement in the abuse.
On July 5, 1996, the Stark County Grand Jury indicted appellant on five counts of rape with force specifications; four counts of felonious sexual penetration with force specifications; and five counts of gross sexual imposition. Judy Ferrell was indicated on five counts of complicity to rape with force specifications; two counts of endangering children; and five counts of gross sexual imposition.
Prior to trial, Judy Ferrell plead guilty to all counts in the indictment against her. In exchange for her testimony at appellant's trial, the State of Ohio agreed to dismiss the force specifications, thereby removing any possibility of a life sentence. Judy was sentenced to fifteen to fifty years in prison with the possibility of parole after serving ten years.
This matter proceeded to trial by jury on November 14, 1996. At trial, the following evidence was presented.
Susan Lauver, who was seventeen at the time of trial, testified she had met appellant when she was five years old. She explained that appellant, who was a friend of her father's, moved into her family's home on Kennet Court. Initially, appellant was very nice to Susan and her brother, however, after a few years, appellant and Judy Ferrell starting physically abusing the children. Susan further testified that when she was about seven years old, appellant began sexually abusing her.
Susan expounded upon the details of the abuse. She explained that in the beginning, appellant would fondle her, but that behavior led to appellant's engaging in vaginal and anal intercourse with Susan while Judy Ferrell physically restrained her. Susan recalled that these sexual assaults occurred repeatedly, as often as once or twice per week for a period of three years. Susan recounted her mother and appellant forcing her to watch as they engaged in sexual intercourse on at least two or three occasions. Regarding the physical and sexual abuse of her brother, Dale, Susan testified she observed appellant touching and beating Dale. She witnessed appellant throw Dale down a flight of stairs. Additionally, she was forced to watch as appellant anally raped her younger brother.
During his testimony, Dale Lauver, who was sixteen at the time of trial, testified that appellant was a friend of his father's, and, as a child, he referred to appellant as his uncle. Like Susan, Dale recalled he had a good relationship with appellant initially, however, appellant eventually began physically abusing him. When asked about his own sexual abuse, Dale answered, "I don't recall any specific instances." Dale recalled observing appellant beat his sister a few times. Dale also testified he observed appellant and his mother having sexual relations on one occasion.
The State's next witness was Kenneth Lauver, Susan and Dale's father. He testified that he met appellant in 1978 and the two men were good friends. Lauver further testified that appellant had moved in with his family for a small period of time while appellant was in school at Stark Technical College. Lauver allowed appellant to move in with the family rather than travel to Malvern, where appellant usually lived with his parents. Ken Lauver stated he was not home often during the period in question because he was attending college full-time and working an evening job to support his family.
Thereafter, Judy Ferrell testified on the State's behalf. Judy also testified appellant had lived with the family. Judy stated that she and appellant entered into an affair. She recalled her children entering the bedroom in which she and appellant were engaged in sexual relations. As the children started to leave the room, appellant instructed them to stay in the room because, as Judy explained, it "didn't matter if they stayed or not, they had already seen."
Ferrell stated that, initially, appellant had a good relationship with her children, however, over time, appellant began molesting them. She testified appellant forced her to help him during the assaults. She would restrain the children while appellant performed various sexual acts upon Susan and Dale. Ferrell testified the sexual acts included fondling, penial and digital penetration as well as oral sex.
Appellant took the stand in his own behalf. During his testimony, appellant stated that during the period in question, he only stayed with the Lauver family approximately fifteen times. Appellant denied having any sexual contact with Susan or Dale. On cross-examination, appellant stated he began to stay with Judy Ferrell more frequently after she filed for divorce against Kenneth Lauver. When asked about the allegations against him, appellant stated that Susan and Judy Ferrell were lying, however, he could not give any reason why the two would do such a thing.
Dr. Richard Steiner, the medical director of the Care Center at Children's Hospital in Akron, testified as a defense expert. As the medical director, Dr. Steiner evaluates children who have allegedly been abused or neglected. In preparation for this case, Dr. Steiner reviewed Susan Lauver's previous medical records for signs of abuse. On direct examination, Dr. Steiner described the findings medical personnel would encounter when examining a six or seven year old girl of small build, who had been raped by a man, six feet, four inches tall and two hundred ninety to three hundred pounds, which is the weight appellant testified he was during the period in question. Dr. Steiner explained the child would be "hurt, would suffer pain, would have some bleeding, may have trouble urinating, wouldn't want to urinate, have painful urination, may have trouble moving her bowels, would very likely have bruising of the anal, genital area." He noted that a lay observer would be able to recognize that something was amiss. Dr. Steiner stated, in his review of Susan Lauver's medical records, he found no indication of any symptoms of child sexual abuse.
On cross-examination, Dr. Steiner admitted the medical records do not contain the in-depth evaluation, which would typically be performed on a child who alleges sexual abuse. He further conceded medical personnel would not conduct any type of gynecological examination unless the child's complaints warranted such an examine. Dr. Steiner explicitly refused to go beyond testifying as to whether or not he would have expected the medical records to include symptoms of the alleged abuse, and whether or not the records contained any notations of such symptoms. He would not say the victim had never been raped. The doctor further explained he had diagnosed children as victims of sexual abuse without the existence of residual findings of penetrating trauma.
After hearing all the evidence and after deliberations, the jury returned their verdicts. As to the counts relating to Susan Lauver, the jury found appellant guilty of three counts of rape with force specifications; three counts of felonious sexual penetration with force specifications; and three counts of gross sexual imposition. As to the offenses relating to Dale Lauver, the jury found appellant guilty of one count of gross sexual imposition. Thereafter, the trial court sentenced appellant to six mandatory life sentences and four one year sentences. The trial court ordered the sentences to be served consecutively.
It is from this conviction and sentence appellant prosecutes this appeal raising as his sole assignment of error:
 THE JURY VERDICT FINDING APPELLANT GUILTY OF RAPE, FELONIOUS SEXUAL PENETRATION AND GROSS SEXUAL IMPOSITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Herein, appellant maintains the jury verdicts are against the manifest weight of the evidence. With regard to appellant's conviction on the one count of gross sexual imposition involving Dale Lauver, appellant contends the jury verdict is against the manifest weight of the evidence because Dale himself testified appellant did not sexually abused him. Appellant submits that Judy Ferrell's testimony that appellant raped and fondled Dale when he was six or seven years old lacks credibility because she testified as part of a plea bargain.
Appellant has misinterpreted Dale Lauver's testimony. When asked about particular incidents involving abuse by appellant, Dale answered, "I don't recall any specific instances." Although Dale did not remember any sexual abuse, he did recall several incidences of physical abuse at the hands of appellant. Judy Ferrell testified she never witnessed appellant penetrate Dale with his penis, however, she did observe appellant penetrate the boy with his fingers. Judy Ferrell admitted restraining her son during these incidences.
With regard to the convictions for rape, felonious sexual penetration, and gross sexual imposition involving Susan Lauver, appellant places great emphasis on the State's concession that there is no physical evidence. Appellant also contends Susan Lauver's credibility should be questioned. He claims her accounts of the assaults were conflicting. Specifically, she testified she suffered constant pain and bleeding during the period of these assaults, however, her father, Kenneth Lauver, testified he never noticed his daughter's suffering any physical symptoms. Furthermore, appellant refers to Dr. Steiner's testimony in which the expert noted the absence of symptoms of sexual abuse in Susan Lauver's medical records.
At trial, Judy Ferrell corroborated to a great extent the testimony of her daughter. Ferrell admitted her own participation in appellant's assaults upon her daughter. Specifically, Judy Ferrell remembered at least five or six occasions during which she restrained Susan while appellant performed various sexual acts upon the girl. Although Susan testified she was sexually abused at the family's residence on Kennet Court, Judy did not remember any instances of abuse occurring there. The jury acquitted appellant of the counts of rape and felonious sexual penetration alleged to have occurred at Kennet Court.
Although Dr. Steiner testified Susan Lauver's medical records were devoid of any symptoms of sexual abuse, the doctor would not opine Susan Lauver was not sexually abused. Dr. Steiner admitted that a child, who was being abused, was unlikely to voice any complaints to strangers, nor would a parent, who was involved in perpetrating such abuse, disclose any problems. The doctor further stated the lack of physical findings does not, in and of itself, indicate that no abuse occurred.
Upon our review of the record and the facts set forth supra, we find the jury did not clearly lose its way so as to result in a manifest miscarriage of justice. The trier of fact was free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. Despite some discrepancy among the testimony of the witnesses, the record contains sufficient evidence to support the verdict.
Based upon the foregoing reasons, appellant's assignment of error is overruled.
The Judgment Entry of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J., Gwin, P.J. and Reader, J. concur.
 JUDGMENT ENTRY
CASE NO. 1997CA0005
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.